# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
#### 3:19-cv-00393-RJC-DCK

| | |
|---|---|
| TVL INTERNATIONAL, LLC,     ) | |
|     ) | |
|   Plaintiff,     ) | |
|     ) | |
| v.     ) | **ORDER** |
|     ) | |
| ZHEJIANG SHENGHUI LIGHTING CO.,   ) | |
| LTD, and     ) | |
| SENGLED USA, INC.,     ) | |
|     ) | |
|   Defendants.     ) | |

**THIS MATTER** comes before the Court on Plaintiff's Petition to Confirm the Arbitration Award and Defendants' Motion for Summary Judgment to Vacate the Award. (DEs 1, 42). The Court has reviewed the pleadings, filings, exhibits thereto, and applicable law and has considered the parties' briefed and oral arguments. For the reasons stated herein, the Court will deny Defendants' motion, grant Plaintiff's petition, and confirm the arbitration award.

## I. BACKGROUND

### A. Procedural Background

Plaintiff TVL International, LLC ("TVL") won an arbitration award against Defendant SengLED USA, Inc. ("SengLED USA") and Defendant Zhejiang Shenghui Lighting Co. ("SengLED China") (collectively, "SengLED"). The arbitration panel found that SengLED breached an NDA and misappropriated TVL's trade secrets. The panel then awarded TVL $1,797,276.48 in damages, including $449,569.12 in compensatory damages and $1,348,707.36 in punitive damages. (3:19-cv-00393, DE 43-1 at ¶¶185-86). On August 10, 2019, TVL filed a petition to confirm the arbitration award which initiated the present case. (3:19-cv-00393, DE 1). Three months later, on November 4, 2019, SengLED filed a petition to vacate the arbitration award

in 3:19-cv-00591-RJC-DCK. (3:19-cv-00591, DE 1). The 3:19-cv-00591 case has been consolidated into the present case.

Defendant SengLED argues four grounds upon which the arbitration award should be vacated, three of which have been fully briefed in the consolidated case, and the fourth of which (the fraud argument) has recently been briefed in the instant case. (3:19-cv-0039, DE 42). The four grounds for vacating the award include: (1) the arbitrators exceeded their authority by awarding damages based on TVL's patent; (2) SengLED was prejudiced by the arbitrators awarding damages on theories not asserted by TVL and which SengLED had no opportunity to contest; (3) the award of punitive damages was a manifest disregard of the law; and (4) the award was procured through fraud and undue means as TVL withheld material information from the arbitrators. (3:19-cv-00591, DE 1-2; 3:19-cv-00393, DE 42-43). In response to SengLED's fraud and undue means argument, TVL submitted the declarations of Shailendra Suman, the CEO of TVL, and Charles Rabon, co-counsel for TVL. (3:19-cv-00393, DE 47-48). SengLED then moved to strike the declarations. (3:19-cv-00393, DE 50). While the Court denied SengLED's motion to strike, to cure any potential prejudice to SengLED, the Court allowed SengLED to depose Mr. Suman and Mr. Rabon as to the fraud and undue means claim. (3:19-cv-00393, DE 57). The Parties supplemental briefing for the fraud and undue means claim is based solely on these depositions. (3:19-cv-00393, DE 59-62).

### B. Factual Background

Mr. Suman founded TVL in 2004 as a consumer electronics business. (3:19-cv-393, DE 43-1 at ¶1). In 2008, Mr. Suman created an idea for a light bulb, called the SmartCharge bulb, that would continue working despite a power outage. *Id.* at ¶32. TVL applied for a patent in India and the United States on the technology. *Id.* at ¶33. TVL's United States patent issued in 2014. *Id.* Defendant SengLED USA is a United States representative of Defendant SengLED China. *Id.* at

2

¶2.   SengLED manufactures LED light bulbs and occasionally acts as an original equipment manufacturer ("OEM") or original design manufacturer ("ODM") for other companies.   *Id*. SengLED manufacturers light bulbs worldwide and has over 200 patents.   (3:19-cv-591, DE 2 at 3).

In 2014, TVL representatives displayed the SmartCharge bulb at multiple Consumer Electronic Shows ("CES") to create interest in partnerships for development and eventually production.   At a CES in New York on November 16, 2014, Alex Ruan, the General Manager of SengLED USA, expressed interest in the SmartCharge bulb.   *Id.* at ¶38.   After the CES, TVL representatives met with SengLED owner Johnson Shen and others at SengLED USA's headquarters.   On December 5, 2014, SengLED agreed to operate as an OEM for TVL.   (3:19-cv-393, DE 43-1 at ¶39).   That same day, the parties executed an NDA, and TVL discussed trade secreted information with SengLED.   *Id.* at ¶40.   The trade secrets included, in part, information that had not been publicly disclosed and had been developed after issuance of TVL's patent.   (3:19-cv-591, DE 22 at 13).   In the ensuing months, SengLED and TVL had continuous communication problems and disagreements about information sharing and volume commitments, ultimately ending their relationship in August 2015 before SengLED had mass produced any SmartCharge bulbs for TVL.   (3:19-cv-393, DE 43-1 at ¶82).

Near the end of this relationship, internal SengLED emails were exchanged about the SmartCharge project.   *Id.* at ¶77.   Specifically, Mr. Ruan asked Anne Wu, TVL's SengLED client liaison, for an update on the bulb.   *Id.*   Ms. Wu responded "that SengLED was ready to design its own bulb with the same capabilities as the SmartCharge bulb."   *Id.*   Ms. Wu also said SengLED's bulb worked better than TVL's and "Mr. Yehua Wan, SengLED's Director of Engineering, had a solution to avoid infringing [TVL]'s patent."   *Id.*

On October 27, 2015, SengLED presented its own lightbulb, the Everbright bulb, at the Hong Kong Lighting Fair. *Id.* at ¶87. Mr. Suman, the CEO of TVL, also attended the Lighting Fair and determined SengLED's Everbright bulb used the "exact industrial design created for SmartCharge." *Id.* at ¶87. On October 7, 2016, TVL sent a cease-and-desist letter to SengLED asserting breach of the NDA, patent infringement, and breach of an alleged manufacturing agreement. (3:19-cv-00591, DE 2 at 4).

In August 2017, TVL exercised its arbitration rights under the NDA. (3:19-cv-00591, DE 2 at 4). One year later, starting on August 28, 2018, the parties engaged in a four-day arbitration hearing. *Id.* at 5; (3:19-cv-00591, DE 2-2 at 7). On March 25, 2019, the three-person arbitration panel issued a fifty-five-page Partial Final Award that provided a factual summary of the proceeding and laid out its rationale for liability and damages. (3:19-cv-393, DE 43-1). The panel found that SengLED breached the NDA, as well as the North Carolina Trade Secrets Protection Act, Federal Defend Trade Secrets Act, and the North Carolina Unfair and Deceptive Trade Practices Act. *Id.* at ¶103. The Panel awarded TVL $1,797,276.48 in damages, consisting of $449,569.12 in compensatory damages and $1,348,707.36 in punitive damages. *Id.* at ¶¶185-86. The panel also issued a fifteen-page Final Award on August 9, 2019, that addressed attorneys' fees and costs, pre-award interest to TVL, and SengLED's procedural prejudice argument made in its Opposition to TVL's Motion for Attorney Fees, Costs, and Pre-Award Interest. (3:19-cv-393, DE 43-2).

As part of its rationale for damages, the panel found a seven percent reasonable royalty rate should be applied against sales of SengLED's EverBright bulb and against sales of a battery backup bulb produced by Feit Electric Company ("Feit"), a patent licensee of TVL. (3:19-cv-393, DE 43-1 at ¶¶175-76, 179). The effective date of the patent license agreement between Feit and

4

TVL was March 2017 and the agreement extended through the end of 2019, provided for two renewal options at Feit's discretion, and granted Feit early termination rights. (3:19-cv-393, DE 43-4).

Regarding the bulbs sold by Feit under the patent license agreement, the panel awarded past and future damages throughout the life of the license, which ran through 2019. However, Feit exercised its early termination rights (rights clear from the face of the patent license agreement) in a July 26, 2018 letter to Mr. Suman. (3:19-cv-393, DE 47 at 2). This letter was not produced in the 1200 pages of discovery TVL provided to SengLED in August 2018, right before the arbitration hearing commenced on August 28, 2018. The pertinent portion of the early termination letter from Feit is provided below:

> Unfortunately, sales of the licensed lamp have not been sufficient to justify the payment of the minimum royalties of $25,000.00 per calendar quarter. Feit Electric has therefore decided to exercise its option to terminate the License Agreement . . . effective as of the end of 2018. . . . Notwithstanding the foregoing, Feit Electric would like to remain licensed, to continue sales of the licensed product, and to pay TVL accrued running royalties. To that end, we propose a second amendment to the License Agreement [] superseding the notice of termination.

(3:19-cv-393, DE 47-1 at 2). Feit and TVL then entered negotiations over the next several months which proved unsuccessful. (3:19-cv-393, DE 47-2, DE 47 at ¶6). Mr. Suman believed the early termination letter was an attempt to renegotiate the license as the parties had already renegotiated once before and he was "convinced [] that the deal with Feit would continue" and "the deal would be back on track for its term in the near future." (3:19-cv-393, DE 47 at ¶¶4-5). Mr. Rabon, co-counsel for TVL, states that neither he, nor any other co-counsel, "[knew] about the Feit communication at the time of the arbitration, and in fact did not learn of it until months later after the closing arguments briefs had been submitted and we were awaiting the arbitrators' ruling." (3:19-cv-393, DE 48 at ¶6). And that, "[e]ven then, we did not view the Feit termination and

Case 3:19-cv-00393-RJC-DCK   Document 63   Filed 05/04/22   Page 5 of 26

request to renegotiate the license as having much significance to TVL's claim for damages [because] TVL's damages were to be measured by the millions of potential light bulb sales that had been lost to very large customers." *Id.* at ¶7.

While SengLED did not have the termination letter during arbitration, it did have the patent license agreement. At the arbitration, TVL submitted a witness statement by Mr. Suman, who had already received the termination letter, that the initial term of the agreement ran through the end of 2019. (3:19-cv-393, DE 43-11 at 32). Counsel for SengLED never cross-examined Mr. Suman on whether Feit exercised its early termination rights. (3:19-cv-393, DE 47). The arbitrators declined to calculate damages using lost profits as proposed by TVL and instead determined reasonable royalties based on (1) sales from Feit for TVL's SmartCharge bulb and (2) sales from SengLED for its EverBright bulb. In particular, the arbitrators used the license agreement with Feit for part of the reasonable royalty damages calculation, including for future profits through the end of 2019. The arbitrators did not know Feit exercised its early termination rights in July 2018.

During discovery of the district court case that has since been consolidated with this one, SengLED first learned of the early termination letter when it served a third-party subpoena on Feit in July 2020. (3:19-cv-393, DE 43 at 8). TVL, prior to arbitration, told SengLED it had produced "everything we could find that was anywhere close to relevant." (3:19-cv-393, DE 43-9). TVL's attorneys have since stated they did not know about this email until after the arbitration concluded. (3:19-cv-393, DE 46 at 2).

## II.    LEGAL STANDARDS

### A.    Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(A). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a

6

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. *Id.* The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citations omitted). "The burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id.* at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Sylvia Dev. Corp. v. Calvert Cty., Md.*, 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal citations omitted). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id.* at 249-50.

## B. Vacating an Arbitration Award

Review of an arbitral award is "severely circumscribed," such that it is "among the

7

narrowest known at law." *Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.*, 142 F.3d 188, 193 (4th Cir. 1998). "Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). "As long as the arbitrator is even arguably construing or applying the contract[,] a court may not vacate the arbitrator's judgment." *Upshur Coals Corp. v. United Mine Workers of Am., Dist. 31*, 933 F.2d 225, 229 (4th Cir. 1991). This is so because "to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and the avoidance of the expense and delay associated with litigation." *MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 857 (4th Cir. 2010).

Consequently, "a federal court cannot vacate an arbitral award merely because it is convinced that the [arbitrator] made the wrong call on the law. On the contrary, the award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." *Coastal Roofing Co. v. P. Browne & Associates*, 771 F. Supp. 2d 576, 585 (D.S.C. 2010) (quoting *Wallace v. Buttar,* 378 F.3d 182, 190 (2d Cir. 2004)). The Supreme Court instructs that "[c]ourts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Major League Baseball Players Assn. v. Garvey*, 532 U.S. 504, 509 (2001). "When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, fact finding' does not provide a basis for a reviewing court to refuse to enforce the award." *Id.* (quoting *United Paperworkers*, 484 U.S. at 39).

Therefore, to prevail, a party seeking vacatur "must clear a high hurdle. It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error." *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010); *see also Federated Dept.*

*Stores, Inc. v. J.V.B. Indus., Inc.*, 894 F.2d 862, 866 (6th Cir. 1990) (the burden of proving an arbitration award should be vacated is very great). "Federal courts may vacate an arbitration award only upon a showing of one of the grounds listed in the Federal Arbitration Act, or if the arbitrator acted in manifest disregard of law." *Apex Plumbing Supply*, 142 F.3d at 193. However, "every presumption is in favor of the validity of the award." *E. Associated Coal Corp. v. Loc. 1503, United Mine Workers of Am.*, No. 92-1943, 1993 WL 165015, at *2 (4th Cir. 1993) (citing *Burchell v. Marsh*, 58 U.S. 344, 351 (1855)).

The Federal Arbitration Act, 9 U.S.C. § 10(a), provides that a court may vacate an arbitration award only on the following grounds:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The Fourth Circuit has also recognized common law grounds for vacating an award, which "include those circumstances where an award fails to draw its essence from the contract, or the award evidences a manifest disregard of the law." *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006). Along with vacating an arbitration award, the Court may modify or correct an arbitration award "[w]here there was an evident material miscalculation of figures . . . ." 9 U.S.C. § 11(a).

### C.     Confirming an Arbitration Award

As noted by the Fourth Circuit, should the petition to confirm the arbitration award comply with 9 U.S.C. § 13 and establish the basis for confirming the Final Award, there is little left for the

district court to do.

> A confirmation proceeding under 9 U.S.C. § 9 is intended to be summary: confirmation can only be denied if an award has been corrected, vacated, or modified in accordance with the Federal Arbitration Act. Under the Act, vacation of an award is obtainable by serving a motion to vacate within three months of the rendering of the award. 9 U.S.C. § 12.

*Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir.1986).

## III.  DISCUSSION

SengLED raises four separate grounds for vacating the arbitration award. As explained below, SengLED cannot meet the high burden required to vacate an arbitration award, and the Court will grant TVL's petition to confirm the award.

### A.  The Arbitrators did not Exceed Their Authority

SengLED argues that the arbitrators exceeded their authority by awarding damages based on TVL's patent, "which was not part of nor subject to arbitration." (3:19-cv-591, DE 2 at 8). The arbitration provision at issue only applied to confidential information (*e.g.*, trade secrets) covered by the NDA and not patentable information which was publicly disclosed. Accordingly, SengLED asserts that the entire award must be vacated because the panel did not specify what part of the royalty award was due to arbitrable confidential information covered by the NDA versus non-arbitrable publicly disclosed patent information. TVL asserts that the damages were awarded solely on SengLED's breach of the NDA and that "the Tribunal awarded damages reflecting what TVL would have received in royalty earnings but for SengLED's manufacturing and marketing of a competing product developed using TVL's trade secrets." (3:19-cv-591, DE 22 at 11).

The Federal Arbitration Act permits a court to vacate the award of an arbitration "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The Fourth Circuit has recognized that any doubts about the scope of the arbitrators' authority are "resolved

10

in favor of the arbitrators' authority as a matter of federal law and policy." *Three S Delaware, Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 531 (4th Cir. 2007).

Here, SengLED contends the seven percent royalty rate which the arbitrators found to be the fair market value of TVL's trade secrets "unquestionably includes" compensation for TVL's patented technology. (3:19-cv-00591, DE 2 at 10-11). Because the NDA permits an award for damages based on trade secrets, and makes no mention of patent infringement damages, SengLED requests the entire award be vacated. As support, SengLED notes that TVL's damages expert admitted he had not broken-down what portion of his seven percent recommended royalty rate was based on trade secrets and what portion, if any, was based on patentable subject matter. *Id.* at 16. SengLED also relies heavily on *Williamson Farm* for the proposition that when an arbitrator provides a single lump sum amount of damages for both an arbitrable claim (breach) and a non-arbitrable claim (negligence), without any differentiation on the amount for each claim, "the entire award must be vacated." *Williamson Farm v. Diversified Crop Ins. Servs.*, 917 F.3d 247, 258-59 (4th Cir. 2019). However, unlike in *Williamson Farm*, there are not separate claims for breach of contract and negligence at issue, only a single claim for damages for breaching an NDA.

Moreover, in the Partial Final Award, the panel found that a reasonable royalty rate on the sale of the technology is seven percent. (3:19-cv-00393, DE 1-2 at ¶176). The panel also found TVL lost the ability to license at that rate as a direct result of "SengLED's violations of the NDA, the NCTSPA, the FDTSA, and the UDTPA." *Id.* At no point did the panel mention or even suggest that the basis for the awarded seven percent included patent violations. "It is well settled that arbitrators are not required to disclose the basis upon which their awards are made and courts will not look behind a lump-sum award in an attempt to analyze their reasoning process unless they believe that the arbitrators rendered it in manifest disregard of the law or unless the facts of

11

the case fail to support it." *MCI Constructors*, 610 F.3d at 862. SengLED has failed to show a manifest disregard of the law or baseless facts sufficient to overturn the arbitration award based on the arbitrators exceeding their authority.

TVL's damages expert also testified that SengLED "couldn't develop the second-generation bulb without the trade secrets." (3:19-cv-591, DE 2-11 746:4-11). Based on this testimony, the panel's finding that the trade secrets were a necessity to create the bulb and license at the seven percent market rate and that SengLED's violation of the NDA prevented TVL from maximizing its royalty rates, is supported by the facts of the case and does not suggest a manifest disregard of the law. And this Court will resolve any potential doubt of the panel's authority "in favor of the arbitrators' authority as a matter of law and policy." *Three S*, 492 F.3d at 531.

**B.      SengLED was not Prejudiced by the Arbitrators**

SengLED next argues it was prejudiced by the arbitration panel awarding damages based on a theory TVL did not assert and which SengLED had no opportunity to contest. (3:19-cv-591, DE 2 at 17). The Federal Arbitration Act permits a court to vacate the award of an arbitration "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). Interpreting this language, the Fourth Circuit has ruled, "a federal court is entitled to vacate an arbitration award only if the arbitrator's [conduct] deprives a party to the proceeding of a fundamentally fair hearing." *Three S*, 492 F.3d at 531. Further expounding on what is a "fair hearing," another court in this Circuit has stated, "the general consensus reached by the courts is that the elements of a fair arbitration hearing include the following: notice of the hearing, an opportunity for each party to be heard, an opportunity to present relevant and material evidence, and an opportunity for each party to present argument before the decision makers." *Ladner v.*

*Dalkon Shield Claimants Tr. (In re A.H. Robins Co.)*, 238 B.R. 300, 316 (E.D. Va. 1999).

According to SengLED, it was prejudiced when the arbitrators awarded damages based on a reasonable royalty theory, as TVL never asserted this theory of damages nor was SengLED offered an opportunity to provide evidence to contest this theory. (3:19-cv-00591, DE 2 at 17). SengLED raised this same concern to the panel before the Final Award issued. (3:19-cv-00591, DE 2-3 at ¶13).

In the Final Award, the panel thoroughly addressed SengLED's concern and found there was no prejudice. *Id.* at ¶¶29-47. The panel explained that TVL sought "lost profits" or alternatively a "reasonable royalty;" that SengLED's own expert testified to the appropriateness of a reasonable royalty theory of recovery; and that SengLED successfully contested certain variables under a reasonable royalty damages calculation, including the unit price. *Id.* The panel further concurred with SengLED's damages expert that "the actual sales of those products in the marketplace is probably the best indicator of performance of those products." *Id.* at ¶39. The panel then used actual sales to predict future sales. Thus, SengLED had ample opportunity to present evidence on the reasonable royalty and was partially successful in persuading the panel as the panel adopted multiple variables propounded by SengLED for the reasonable royalty calculation. *Id.* at ¶¶29-47. The arbitrators explained this, noting:

> [W]hile the Tribunal did not award damages at either extreme advocated by the Parties, the reasonable royalty damages methodology adopted by the Tribunal was endorsed by each of the Parties; each Party had a fair opportunity to present evidence and argument on all three variables used in the damages calculation (royalty rate, unit price, and sales volume); and the Tribunal's award relied solely on that evidence. . . . There was no prejudice to SengLED.

*Id.* at ¶47. Therefore, SengLED's claim that it was prejudiced because it was not able to contest the reasonable royalty determination, which led to an unfair hearing, fails to overturn the arbitration award. *Three S*, 492 F.3d at 531; *See* Gary B. Born, Int'l Comm. Arb. § 25.04[B] (2d

13

Ed. 2014) ("[T]he fact that the arbitral tribunal did not adopt the valuation method of either party, but instead adopted its own position, will not ordinarily constitute a surprise decision.").

### C. The Award of Punitive Damages was not a Manifest Disregard of the Law

SengLED argues the punitive damages award was a manifest disregard of the law. (3:19-cv-591, DE 2 at 20). Under common law, an award may be set aside if the arbitrators show a manifest disregard for the governing law. *See Patten*, 441 F.3d at 234; *see also Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 480 (4th Cir. 2012). This applies "only when a plaintiff has shown that: (1) the disputed legal principle is clearly defined and is not subject to reasonable debate; and (2) the arbitrator refused to apply that legal principle." *Jones v. Dancel*, 792 F.3d 395, 402 (4th Cir. 2015). The manifest disregard standard is not an invitation to review the merits of the underlying arbitration or to establish that the arbitrator misconstrued or misinterpreted the applicable law. *Id.*; *E. Rick Miller Constr. Co. v. Mugridge*, No. 5:09-cv-127-V, 2012 U.S. Dist. LEXIS 150149, at *6 (W.D.N.C. Oct. 18, 2012) ("The manifest disregard standard requires more than a showing that the arbitrator[] misconstrued the law, especially given that arbitrators are not required to explain their reasoning.") (internal quotations omitted).

Fist, SengLED argues it did not act willfully and maliciously. (3:19-cv-591, DE 2 at 21). In North Carolina, punitive damages are allowed when a claimant proves a defendant is liable for compensatory damages and there was either fraud, malice, or willful and wanton conduct related to the injury for which compensatory damages were awarded. N.C. Gen. Stat. § 1D-15. North Carolina has defined malice as "a sense of personal ill will toward the claimant that activated or incited the defendant to perform the act or undertake the conduct that resulted in the harm" and has defined willful or wanton conduct as "conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm."

14

In the Partial Final Award, the panel pointed out that SengLED's misappropriation of trade secrets was not a mistake or in good faith and noted that SengLED "deceptively assured TVL not to worry about 'the confidentiality thing' even as it was using TVL's trade secrets to develop a competing bulb." (3:19-cv-591, DE 2-2 at ¶160). The panel also noted that at the same time Ms. Wu (SengLED client liaison to TVL) was giving assurances to TVL that SengLED would abide by the NDA, Ms. Wu sent an internal email that SengLED was "ready to design our own item with full confidence and that, having devised a means of working around TVL's patent, TVL has no limit for us any more." *Id.* at ¶146 (internal quotations omitted). Based at least in part on these facts, the panel determined that SengLED purposefully deceived TVL by "using trade secrets and technical engineering assistance and knowhow provided by TVL to develop that competing bulb, notwithstanding assurances that TVL should not worry about 'the confidential thing.'" *Id.* at ¶147. While SengLED may not believe this is willful and malicious conduct, SengLED has failed to show how the panel manifestly disregarded the law. Given the deferential standard, the arbitration panel's finding was sufficient on this point and did not constitute a manifest disregard of the law.

Second, SengLED argues that punitive damages should not have been awarded based on SengLED's corporate status, noting that punitive damages may only be awarded against a corporation "if officers, directors, or managers of the corporation participated or condoned the conduct constituting the aggravating factor." N.C. GEN. STAT. § 1D-15(c); (3:19-cv-591, DE 2 at 22). SengLED contends Ms. Wu was not an officer, director, or manager of SengLED and the arbitrators made no such finding to the contrary. (3:19-cv-591, DE 2 at 22). However, SengLED fails to recognize the findings of the panel regarding Mr. Ruan, SengLED USA's General Manager, and Mr. Wan, SengLED's Director of Engineering, in connection with Ms. Wu's actions.

Most notably, the panel took notice of an email chain between Mr. Ruan and Ms. Wu regarding an update on the design of SengLED's competing bulb. In this email, Ms. Wu specifically told Mr. Ruan that Mr. Wan had found a way to avoid infringing Suman's patent and that SengLED's own version of the bulb was almost ready to produce. (3:19-cv-00393, DE 1-2 at ¶77-79). Mr. Wan also testified that, assuming the facts in the email were true, work would have begun around February 2015 on the Everbright bulb to have it ready by the time when Ms. Wu and Mr. Ruan had exchanged these emails, well before the parties' relationship broke down. *Id.* at ¶80. Given the actions of the SengLED officers noted by the panel, SengLED's argument here also fails.

Third, SengLED contends the panel did not consider the nine factors set forth in N.C. Gen. Stat § 1D-35(2) when determining the amount of punitive damages to award. (3:19-cv-00591, DE 2 at 23). Yet, as discussed previously, arbitrators are not required to disclose the factors considered in their award, and courts will not look into an award in an attempt to analyze an arbitrator's reasoning, unless the Court believes the arbitrators rendered it in manifest disregard of the law. *MCI Constructors*, 610 F.3d at 862. Thus, the fact that the panel did not explicitly walk through each factor does not mean the panel manifestly disregarded those factors or the law on punitive damages.

Moreover, an arbitrator's misapplication of the law, faulty legal reasoning, or erroneous legal conclusions are not sufficient to vacate an award, it requires that the arbitrator understands it but proceeds to disregard it. *Upshur*, 933 F.2d at 225. The Fourth Circuit has noted that when an arbitration panel is presented with evidence that could form the basis of its conclusions, a court will not assume that the arbitrators knew the law and purposefully ignored it. *See Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 149 (4th Cir. 1994). Given that there is a plausible factual basis for the panel's finding of malice and willful conduct, it cannot be assumed that the panel

purposefully ignored the law despite understanding it and recognizing its application to the case.

### D. The Award was not Procured through Fraud and Undue Means[1]

SengLED argues the arbitral award was procured through fraud and undue means. Under 9 U.S.C. § 10(a)(1), a district court may vacate an arbitration award "where the award was procured by corruption, fraud, or undue means." To satisfy 9 U.S.C. § 10(a)(1), a party must show that the fraud or undue means "was (1) not discoverable upon the exercise of due diligence prior to the arbitration, (2) materially related to an issue in the arbitration, and (3) established by clear and convincing evidence." *MCI Constructors*, 610 F.3d at 858. SengLED cannot prove by clear and convincing evidence that TVL's actions constituted fraud and undue means. And, even if SengLED could prove as much, the alleged fraud and undue means was discoverable upon due diligence.

#### i. The Early Termination Letter was Material to an Issue of the Arbitration

SengLED argues that the alleged fraud was material to an issue of the arbitration, noting that the panel relied on the Feit license to determine a reasonable royalty, and TVL's failure to produce the early termination letter inflated damages by fifty-two percent because the panel based its award on the continuation of the licensing agreement through 2019. In response, TVL states it is impossible to know whether or not the termination of the licensing agreement would have made any difference on the result.

Materiality in fraud cases means having a tendency or capability to influence. *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 1996 (2016). "This last element does not require the movant to establish that the result of the proceedings would have been different had

---

[1] SengLED's arguments in the supplemental briefing also fail to show fraud and undue means by clear and convincing evidence. (3:19-cv-00393, DEs 59-62). This includes the fact the Mr. Suman communicated with Feit before he received the early termination letter; that Mr. Suman had TVL's server destroyed in 2019, after the arbitration, when he was winding down the business; and that TVL's attorneys found out about the early termination letter after the arbitration hearing.

17

the fraud not occurred." *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 (11th Cir. 1988). In *Bonar*, the Court noted that the moving party had shown the fraud was material because the only factual issue before the arbitrators was punitive damages, about which the expert had fraudulently testified at considerable length. *Bonar*, 835 F.2d at 1384. The court noted that the arbitrators' written award, although brief, nevertheless reflected the influence of the expert's testimony. *Id.*

Here, the panel did not know of the early termination letter and relied on the license agreement with Feit when it calculated the damages award. Ultimately, materiality does not require the alleged fraud to have actually changed the result but only that it has the tendency to influence. The early termination letter certainly could have influenced the panel, and SengLED has cleared the bar of establishing materiality. TVL's failure to produce the letter in question during the arbitration is indeed material for purposes of 9 U.S.C. § 10(a)(1).

>    ii.    SengLED Cannot Prove by Clear and Convincing Evidence that TVL's Actions Constituted Fraud and Undue Means

SengLED next argues that the facts surrounding TVL's failure to produce the early termination email or inform the panel of the early termination is clear and convincing evidence of fraud and undue means. "Clear and convincing evidence has been defined as evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established, and, as well, as evidence that proves the facts at issue to be highly probable." *United States v. Youngblood*, No. 20-6085, 2021 WL 2910667, at *1 (4th Cir. July 12, 2021) (citing *United States v. Hall*, 664 F.3d 456, 461 (4th Cir. 2012)). "In a case involving nondisclosure of information, clear and convincing evidence must show that the [party] made a deliberate decision to withhold a known material reference." *Fuma International LLC v. Reynolds Vapor Company*, 2020 WL 3470458, at *1 (M.D.N.C. Mar. 5,

2020).

The essential elements of fraud include a "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Olympus Managed Health Care, Inc. v. American Housecall Physicians, Inc.*, 662 F. Supp. 2d 427, 438 (W.D.N.C. 2009). Undue means are actions that are immoral, if not legally objectionable, and have not been applied to actions that are merely legally objectionable. *MCI Constructors*, 610 F.3d at 858. Some courts have interpreted such a requirement as requiring a party to have acted in bad faith. *Shearson Hayden Stone, Inc. v. Liang*, 493 F. Supp. 104, 108 (N.D. Ill. 1980). "The best reading of the term undue means is that it describes underhanded or conniving ways of procuring an award that are similar to corruption or fraud, but do not precisely constitute either." *Three S*, 492 F.3d at 529. The term undue means also requires the misconduct to have been intentional. *PaineWebber Grp., Inc. v. Zinsmeyer Trusts P'ship*, 187 F.3d 988, 991 (8th Cir. 1999).

SengLED points to five alleged bad faith actions that constitute fraud and undue means: (1) withholding the early termination letter from the final document production; (2) TVL's attorney stating in the final document production cover letter that TVL has "given everything we could find that was anywhere close to relevant," even though the early termination letter was not produced; (3) submitting Mr. Suman's witness statement which said that the initial term of the Feit and TVL licensing agreement went through 2019 without mentioning the early termination; (4) submitting an expert report for damages for time periods that exceeded the date of the early termination letter; and (5) that TVL did not attempt to correct the record between the first and second part of the award and instead moved to confirm the award immediately after the Final Award issued. (3:19-cv-00393, DE 43 at 13).

First, SengLED contends that TVL, fraudulently and in bad faith, withheld the early termination letter from the final document production in August 2018. Mr. Suman received the early termination letter from Feit on July 26, 2018. In support of its position, SengLED notes that the early termination letter showed there would be no sales under the license in 2019, and there would be only a small number of units sold during the remainder of 2018. *Id.* at 8-9. SengLED believes TVL recognized the impact the early termination letter would have on its damages case and that TVL (via Mr. Suman) and its attorneys made a conscious decision to withhold the information from SengLED in an attempt to deceive the panel.

However, Mr. Suman stated in his declaration that he did not withhold the early termination letter from Feit in bad faith but rather because he believed it was not relevant. Mr. Suman did not believe the early termination letter would end TVL's relationship with Feit and viewed the letter instead as an invitation to renegotiate. (3:19-cv-00393, DE 47 at 2-3). The early termination letter supports Mr. Suman's statement because, after exercising its early termination rights, Feit stated that "notwithstanding the foregoing, Feit Electric would like to remain licensed, to continue sales of the licensed product, and to pay TVL accrued running royalties. To that end, we propose a second amendment to the License Agreement [] superseding the notice of termination." (3:19-cv-00393, DE 47-1). Thereafter, negotiations occurred, and, at the time, Mr. Suman was convinced that the relationship with Feit would continue, just without a minimum sale requirement. (3:19-cv-00393, DE 47 at 3; DE 47-2). Mr. Rabon, co-counsel for TVL, stated that neither he nor his co-counsel or anyone at their firms knew of the early termination letter until months after the final briefs were submitted. (3:19-cv-00393, DE 48 at 2). While the early termination letter was relevant to the arbitration proceeding, these facts alone do not show, by clear and convincing evidence, that TVL purposefully attempted to deceive the panel and SengLED, which is a

20

necessary predicate for finding fraud and undue means.

Second, SengLED points out that one of TVL's attorneys, Mr. Wilder, stated in an email dated August 11, 2018 (final document production email) that TVL has "given everything we could find that was anywhere close to relevant." (3:19-cv-00393, DE 43-9). SengLED argues that this email constitutes bad faith and an intent to deceive. However, another TVL attorney, Mr. Rabon, stated that TVL's attorneys did not know about the early termination letter at the time when the final document production occurred and did not find out about the letter until months after closing briefs had been submitted. (3:19-cv-00393, DE 48 at 2). Additionally, Mr. Suman declares that he did not believe the termination letter was relevant because he viewed the termination letter only as an opportunity to renegotiate. (3:19-cv-00393, DE 47 at 2). As TVL's attorneys did not know of the early termination letter, Mr. Wilder's statement that TVL had produced all relevant documents cannot have been made in bad faith with an intent to deceive.

Third, SengLED contends that Mr. Suman's witness statement, which noted that the initial term of the TVL and Feit licensing agreement ran through 2019 but failed to mention the early termination, was submitted in bad faith or with intent to deceive. However, it would be a leap to hold that TVL's witness statement constitutes fraud or undue means. The agreement's initial term did run through 2019, subject to the exercise of the early termination clause, so stating the initial term runs through 2019 is accurate and does not constitute fraud or undue means. Especially given the fact that Mr. Suman fully expected the relationship with Feit to continue.

Fourth, SengLED next argues that TVL submitted an expert report for future damages for time periods that exceeded the date of the early termination letter, and that this act was done in bad faith. SengLED thus contends this is a fraudulent or bad faith action because TVL knew the sales at the end of 2018 would be depressed because of the early termination letter and low inventory,

and the sales in 2019 would be non-existent. In response, TVL states (through Mr. Suman's declaration) this was not done in bad faith because Mr. Suman expected the relationship with SengLED to continue despite the termination letter. (3:19-cv-00393, DE 47 at 2). However, there is no evidence the expert or TVL's attorneys knew about the early termination letter and Mr. Suman incorrectly believed that the early termination letter was not relevant. These facts do not show clear and convincing evidence of fraud and undue means.

Fifth, SengLED failed to cite to any arbitration rule or point out any legal duty that required TVL to correct the record based on new evidence after the submission of final briefs. And moving to confirm the arbitration award on a Saturday (the day after the Final Award was granted) is not clear and convincing evidence of fraud or undue means. (3:19-cv-00393, DE 43 at 13). TVL's attorney, Mr. Rabon, stated in his declaration that TVL immediately moved to confirm the arbitration to eliminate the possibility that SengLED would file a petition to vacate in an inconvenient forum. (3:19-cv-00393, DE 48 at 3). Mr. Rabon noted that SengLED had already filed a suit in Delaware and TVL was concerned SengLED would try to file suit in Georgia (SengLED USA's principal place of business) or even China. *Id.*

Aside from the alleged bad faith acts, it is noteworthy that TVL sought lost profits during arbitration. Under a lost profits analysis, the amount of mitigation (*e.g.*, sales by Feit) is deducted from the lost profits to determine the total damages amount. This means TVL, under its damages theory, would recover more if the Feit sales were minimal. This runs counter to SengLED's fraud and undue means claim as it is unlikely TVL would have been motivated to withhold information about the early termination letter as this would have helped TVL's damages argument.

Accordingly, the facts put forward by SengLED, singularly or in the aggregate, fail to provide clear and convincing evidence that TVL's failure to produce the early termination letter

was done in bad faith or with an intent to deceive. Applying the standards in *Youngblood* and *Fuma International*, SengLED must put the Court in a position where there is a lasting impression that it is highly probable TVL made a deliberate decision to withhold known material information. *Youngblood*, 2021 WL 2910667, at *1; *Fuma International*, 2020 WL 3470458, at *1. SengLED has not met that burden. While SengLED has provided a motive for why TVL would have withheld the letter, SengLED has been unable to provide sufficient evidence necessary to show by clear and convincing evidence that TVL made a conscious and deliberate bad faith decision to deceive.

### iii. The Early Termination was Discoverable Upon the Exercise of Due Diligence

Whether a party exercised "due diligence" is an individualized inquiry that requires a court to consider the totality of the circumstances. *Hannigan v. United States*, 131 F. Supp. 3d 480, 488 (E.D.N.C. 2015) (citing *Aron v. U.S.*, 291 F.3d 708 (11th Cir. 2002)). Here, SengLED does not dispute that during discovery, in February 2018, it received a copy of the Feit license agreement, approximately six months before the arbitration hearing. (3:19-cv-00393, DE 46 at 11). TVL argues that after reading the license, SengLED should have noted that Feit had the option to terminate the agreement by the end of "the second quarter of the second year of the agreement" (*i.e.*, July 2018), which was still a month before the arbitration hearing. (3:19-cv-00393, DE 43-4 at 8(b)). Because so many documents were produced, SengLED contends that, absent TVL notifying SengLED of the early termination clause, SengLED had no reason to focus on that provision.

SengLED compares the instant case to *Bonar*, where an arbitration award was procured through undue means. 835 F.2d at 1384. In that case, a party put on an "expert" witness who perjured himself, stating that he had extensive educational and work experience that made him an

expert in stock trading practices when in fact he did not. *Id.* The court found this undue means was not discoverable before the arbitration because the rules of the American Arbitration Association do not provide for a pre-hearing exchange of witness lists. *Id.* at 1384.

However, unlike in *Bonar*, arbitration rules did not prevent SengLED from learning of the early termination letter. In fact, after SengLED acquired the license agreement during discovery, SengLED had the opportunity to ask Mr. Suman on multiple occasions whether Feit exercised its early termination rights, including during Mr. Suman's deposition and during cross-examination. SengLED failed to do so on either occasion, even though during the arbitration hearing Mr. Suman was cross-examined for more than an hour and was even asked about other provisions within the license agreement. (3:19-cv-00393, DE 47 at ¶9).

Unlike *Bonar*, *Pontiac Trial* is illustrative. *Pontiac Trial Med. Clinic, P.C. v. PaineWebber*, Inc., No. 9201972, 1993 WL 288301 (6th Cir. 1993). In *Pontiac Trial*, the party seeking to vacate the arbitration award argued that providing misleading discovery responses and failing to produce numerous documents, which were later obtained through independent sources, and which were responsive to discovery requests, amounted to fraud and undue means. *Id.* at *3. The Sixth Circuit found this was insufficient to make out a prima facie claim of fraud and undue means. *Id.* at *4. Of note, the court held that regardless of fraud and undue means, the information could have been found by due diligence.

> Moreover, a plaintiff cannot successfully make out a prima facie claim of fraud if the fraud was discoverable upon the exercise of due diligence prior to or during the arbitration. Pontiac Trail has failed to show that it exercised due diligence in attempting to discover the alleged fraud prior to the arbitration. Pontiac Trail admits that the disputed documents were obtained from independent sources, not PaineWebber, and has given no reason why it could not have reasonably obtained them prior to or during the arbitration hearing.

*Id.*; *see also H.K porter Co., Inc. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1118 (6th Cir.

24

1976) (allegations of nondisclosure during pretrial discovery are not sufficient to support an action for fraud on the court); *USM Corp. v. SPS Technologies, Inc.*, 694 F.2d 505, 509 (7th Cir. 1982), *cert. denied*, 462 U.S. 1107 (1983) (failure to voluntarily produce a document during discovery does not necessarily amount to fraud). Similarly, other courts, including the Fourth Circuit, have found that a party's failure to diligently cross-examine a witness can preclude a vacatur challenge on fraud or undue means when the party could have learned of the alleged fraud during cross-examination. *Weirton Med. Ctr., Inc. v. QHR* Intensive Res., LLC, 682 F. App'x 227, 228 (4th Cir. 2017) ("Weirton had the opportunity to question these witnesses at the arbitration hearing and failed to . . . . Weirton cannot complain that these witnesses tried to conceal something that it never sought to discover."); *O.R. Sec., Inc. v. Pro. Plan. Assocs., Inc.*, 857 F.2d 742, 749 (11th Cir. 1988) ("O.R. had the opportunity to cross-examine on the alleged false testimony. Because the alleged fraud was discoverable during the arbitration proceedings, O.R. may not seek to vacate the judgment on that ground.").

Here, SengLED had access to the full range of discovery and in fact had the licensing agreement which put them on notice, six months before the arbitration hearing, that Feit could choose to terminate the agreement early. Given the material change that SengLED contends the early termination made, and the fact that Mr. Suman and TVL's expert testified about the license agreement, a prudent lawyer in SengLED's position would have reviewed the license agreement and inquired as to whether Feit had exercised its early termination rights. Thus, even assuming fraud or undue means occurred, it was discoverable through due diligence.

## IV.  CONCLUSION

SengLED's motion for summary judgment to vacate the arbitration award fails. TVL's petition to confirm the award conforms with 9 U.S.C. § 13 and establishes the basis for confirming the Final Award. As the award has not been corrected, vacated, or modified, the Court confirms

the award. *Taylor*, 788 F.2d at 225 ("[C]onfirmation can only be denied if an award has been corrected, vacated, or modified.").

**IT IS, THEREFORE, ORDERED** that:

1.  SengLED's Motion for Summary Judgment to Vacate the Arbitration Award, (DE 42), is **DENIED**; and

2.  TVL's Petition to Confirm the Arbitration Award, (DE 1), is **GRANTED**; and

3.  The Arbitration Award is **CONFIRMED**.

**SO ORDERED.**

The Clerk is directed to close this case.

Signed: May 4, 2022

Robert J. Conrad, Jr.
United States District Judge